Good morning, Your Honors. May it please the Court, my name is Philip Smith. I'm here on behalf of the petitioner, Ms. Natasha Bilishta, and her two children, Dasara and Frank. Your Honor, this is an asylum case concerning a really extraordinarily brave woman who at her asylum hearing, the immigration judge found that she had suffered past persecution on account of the imprisonment of her father under the communist regime for ten years and then the consequences of the harm to the rest of the family members. He also found that she had been entirely truthful and she was a credible witness in front of the immigration court. The immigration judge also found that she was currently being terrorized in Albania. However, he denied the asylum application because one, although she had established past persecution, the immigration judge determined that country conditions had changed such that the presumption of a well-founded fear of future persecution had been rebutted. He also found that the past persecution was not sufficiently severe so that she should be granted humanitarian asylum under the Boards Matter of Chin case. And then the judge, with regards to the current persecution, which he found, that she was being terrorized, he found that that was not on account of her political opinion. And so what I'd like to do this morning is focus on really three significant errors that require reversal of the decision. Now, and I should point out, the Board of Immigration Appeals issued an affirmance without opinion under their streamlining regulations. First, with regards to the changed country conditions, substantial evidence in this record does not support the conclusion that there has been a fundamental change in country conditions in Albania. And it is clear from the regulations that the burden of proof in establishing changed country conditions is on the Immigration and Nationalization Service. And there was not an individualized, under this court's case law, there has to be an individualized determination about the changed country conditions and how it specifically applies to this individual's situation. The second issue is the immigration judge, if it is established that the presumption has been rebutted, such that she no longer has a well-founded fear of persecution, under the regulations there are two alternative methods by which she is still eligible for asylum. One is the severity of the past persecution. And that is the matter of Chin. It also goes back to this court's decision in Desir versus Ilken. A second alternative is that even if the persecution is not severe, if there is a reasonable possibility that the individual faces other serious harm in their country, that is an alternative method for being granted asylum. Now, other serious harm, does that mean other serious harm that would constitute ill treatment because of a protected ground? The Federal Register explanation, now that other serious harm has not been, as far as I'm aware, has not been interpreted by this court, nor has it been interpreted by the board in a precedent decision. The Federal Register explanation is that other serious harm is independent of, it does not require that it be on one of the five protected grounds. And it is independent of the source, the reason for the past persecution. But it does have to rise to the level of persecution. But it can be persecution in the sense of, when you say rise to the level of persecution, if I'm understanding you correctly, that is to say it has to be sufficiently bad treatment, but it does not have to be persecution in the original sense of ill treatment because of a protected ground? That is correct, Your Honor. Yes. So if, for example, applied to this case, your argument is that even if we were to conclude that the fight over the apartment in the pallet, or the unit, I'm not quite sure, the word pallet is a new one to me in this context. If we were to conclude that despite the involvement of the lawyer for the Secret Service and so on, that that really was not persecution on behalf of a protected ground, nonetheless the threat that she continues to feel arising out of that episode is harm within the meaning of the country changed country conditions regulation? Exactly, Your Honor. So that even if country conditions have changed, she remains eligible for a grant of asylum based on this other serious harm. And the immigration judge did not address that. And the Board of Immigration Appeals did not address that issue. And then the final issue that I want to look at is that it was a mistake to conclude, an error of law to conclude that the persecution that she was facing was not on account of her political opinion. Now persecution, you're now talking about the thing about the apartment? The current situation, correct, which began with the apartment, but then her current fear now is that she's going to be made, and the threat is that she's going to be made an example of. And that has gone beyond just the apartment. Help me understand why that is on behalf of a protected ground. I understand part of your argument is it doesn't have to be on part of it because of a protected ground, but help me understand why that's so. Well, Your Honor, fundamentally, her political opinion, her position, her actions, demonstrate that she is opposed to a political system, to a government, based on corruption, extortion, intimidation, and violence. She has chosen the rule of law to honor, to go through the courts, to honor the decisions of judges, to protect her interest in her home. The opposition, the individuals connected to the government, their base of power is corruption, intimidation, threats of violence, and so she is directly opposed to their base of continuing in power. And those individuals, and that really is the choice, the political choice, that is facing all of the citizens of Albania. We may have all the non-corrupt people of Albania immediately here if that's a protected ground. Well, she has been told directly, she has been threatened directly, that she will be made an example of. And she has been singled out and suffered the persecution by these individuals, which gives rise to this well-founded fear that this is going to happen to her. And I gather from the IJ's opinion, the IJ's decision, that he says he believes her. So there's no credibility question. That's correct, John. That's correct. So not only do we not have an adverse credibility, I think he just says, I believe you. And he found that she was being terrorized. I mean, he was completely sympathetic to her claims. So the question is the legal consequence of the story, not whether the story is true. That is correct, John. If I might go back to the question on has the country conditions, has the service met its burden of showing that country conditions have changed in Albania. Under this court's case law, it requires more than a simple factual showing that the government has changed. And the court has said that a State Department report, standing alone, is not sufficient to show a fundamental change in country conditions. And in this case, the service, and I say the service, it's now DHS, actually did not submit even a country report. What is in the record is the profile of asylum claims, which is the State Department profile of asylum claims, which is submitted into the record by the immigration court itself. And so the State Department's reports on human rights country condition reports are readily available. They're routinely offered by the service. They were not even offered into the record here. So the only evidence in the record is the September 1997 State Department profile on asylum claims and a November 1998 addendum to that report. And that report basically establishes that there is an ongoing situation of lawlessness, corruption, political factions who control by violence, intimidation, corruption, and extortion. And it really doesn't address the former communist regime, that these individuals, although they're no longer called communists, are still part of different political factions and parties that are in power there. We're at the end of the time. Why don't we hear from the government, and then we'll give you a little time to respond. Thank you. Thank you. Thank you, Your Honors. This court will review the immigration judge's decision because it was affirmed without opinion. And under the review of that decision, this court will view the IJ decision as the final agency decision and will not disturb the IJ's decision unless the evidence presented was so compelling that no reasonable fact finder could fail to find the requested fear. Briefly, on the well-founded fear issue, it is true that the immigration judge found her credible. It is also true that he did find past persecution within the 10 years that her father was in jail from 75 to 85, based on some of the conditions that the family had to endure during that time period. However, after finding the past persecution, the government rebutted the presumption of the well-founded fear by the presentation of the country condition report. Did you do the country condition report or just the profile? I mean, I think I just heard him say you did not put into the record the country condition report. It's entitled Silent Profiles and Country Conditions from the State Department. The 87 report and the 98 report. It's the profile that's in the record. It's entitled Silent Profile and Country Conditions. Profile of Silent Claims and Country Conditions. No, I have that in front of me. First of all, the State Department reports significant changes in Albania after the 1990 revolution. Let me interrupt you for just a moment and ask you on a question of law to which I frankly don't know the answer, but I guess I'm about to try and figure this out. The other side just said as a matter of law that when we're talking about changed country conditions, it is not necessary to show that the harm comes on account of a protected ground. All that is necessary to show is harm that rises to the level of harm. Do you agree with that statement? Not in the nature of a typical asylum claim based on one of the five enumerated grounds in the statute. If I'm moving over to the humanitarian asylum. I'm not sure I understood your answer. Can I state the question again? As I understood the statement from the opposing counsel, the only thing that it is sufficient to show harm to protect himself against an argument of changed conditions, that he show the harm. He does not need to show that the harm is caused on account of one of the protected grounds. Is he correct in so stating? No. He has to, in the asylum claim, and this is dealing with the imputed political opinion, which there is a ground on. Her claim is really twofold. It's first on the well-founded tier of. So just to make sure I understood your answer. You're saying that even when the question is changed country conditions, we have to be convinced that the harm that she will suffer after the change is a harm on account of one of the protected grounds. Yes, Your Honor. Okay. Yes, Your Honor. There is a portion, the board has carved out sort of an exception to that in a humanitarian asylum claim, which is not really provided for under the statute in their board case law, which when the past persecution is so severe that they cannot show a well-founded tier, but based on humanitarian grounds, she could be granted asylum in that particular case. Not only does the State Department show that, but as the immigration judge noted, the particular facts of this case show that country conditions have significantly changed in Albania. For instance, in 1992, she bought her own apartment, Hallett, in 1992, and she owned it for two years until she had a dispute with, as she described, either a previous owner or a previous tenant. And it's interesting to note that that dispute was handled in the courts of Albania. Well, yeah, it was handled in the courts after they shoot up the apartment with a Kalashnikov. She loses, and she loses, and she finally prevails in the Supreme Court, and then they tell her, we're going to get you. So it's not just an ordinary resolution, and the court says, we would think of it here. Well, yeah, well, to a certain extent, it's not going to be within our system of justice, but it's in within a system recognized, which before 1990. Well, she wins. She wins in the end. She does win, and in fact, she wins against an attorney, apparently, who had some connections to the Albanian secret police. Yes, yes. So she does ultimately win that case, and ultimately is awarded, and the low court decision is overturned. And she's now afraid to go back because she won the case. Well, that is her claim, that she's afraid to go back. Well, that's what she said, and I heard her say, I believe her. Well, he believes her in that she suffered the past persecution. But again, the past persecution has, in this particular ground, and this is where her sort of claim sort of dovetails away from the normal asylum claim, and she's saying, because my persecution was so severe, and that the immigration judge did not find it was so severe, that she warrants a grant of humanitarian asylum. I understand that, but what I was picking up on, you said that's what she claims. It's more than what she claims. We are required to take that as truth. That's what she said, and the IJ believed it. The IJ believed it only to the extent, in his findings, only to the extent that she suffered persecution, past persecution. But then he makes another finding that it's not as severe as to warrant the grant of humanitarian asylum, because what was interesting. I understand that. We may be on the same page. We may be on. She says, because I won my case, I am afraid to go back because they told me they're going to get me. And I think I have to take that as a true statement. Yeah, Your Honor, you do. That is credible, but that still doesn't meet the standard for the. That's a separate question. One of these is severe. You're right, Your Honor. We're on the same page. She is credible, and you have to accept that, and the government makes no qualms with that particular finding. It's the next level that we get to, because that particular finding of persecution is really not based on any of the five enumerated factors in the statute. In fact, the attorney during the proceedings had problems fitting it into any particular aspect, and he admits that. And the petitioner herself admits that. You know, she was asked at one point, like, why do you think this happened to you? And he said, they wanted my house, and admits that she has no political opinion whatsoever. And it's interesting to note that her father, who was released in 1985, still lives in Albania along with her. Who lives in the house now, or in 1999? That's interesting, Your Honor. It's not in the record. I don't have that answer. So I don't know who lives there. We do know that apparently after she came, her husband also came at a later time and now has a pending asylum application before the Immigration Court in Florida. And do we know the status of that? It's still pending. It's not had an IJ hearing? Not an IJ hearing yet. Your Honor, subject to the Court's questions, that concludes. Okay, thank you very much. Thank you. If I may, Your Honor, to answer your question about the house. The house, she gave up. It was sold when they left the country. So they no longer have the house. So she no longer has an argument with the folks who are trying to take it. Well, as was found by the immigration judge, they're going to make her an example. And that's why she's afraid to go back now. It's not because of the house. It's because they're going to make an example of someone who has opposed them. Who won the lawsuit. That's correct, Your Honor. Her father actually is no longer alive. He was at the time of the hearing. He was at the time of the hearing, but he's not alive anymore. Something that really has not been, I don't think, been clearly laid out is this regulation with regards to these two alternative methods of being granted asylum after you've established past persecution, but the well-founded fear has been rebutted. That regulation became final in January 2001. And so it was final at the time this case was on appeal with the board. But it was not at the time of the hearing in front of the immigration judge. And what does this particular regulation say? This regulation, Your Honor. Can you give me the number here? Yes, it is 8 CFR 1208.13, small b, numeral 1. Are these parents here somehow? Yes, I'm sorry. 1208.13, parent b. Parenthesis b, parenthesis 1, parenthesis small 3i, parenthesis large a and large b. Okay, and that's effective January 2001. And what does that regulation say? That regulation says grant in the absence of a well-founded fear of future persecution. Capital B, which is what we're focusing on, says the applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country. Capital A says the applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution. So these are two separate things. And you're relying on B. That's correct, Your Honor. And you're saying that this was in effect at the time the BIA made its decision and should be applied to this case. That's correct, Your Honor. That's all I have. Okay. Thank you very much for your argument.  The case of D'Alessio v. Ashcroft is now submitted for decision. That concludes our argument calendar for this morning. We're in adjournment until tomorrow morning. Thank you very much. All rise.
judges: Reavley , W. Fletcher, Tallman